THOMASON and HAYNES, ex'ors *vs* BLACKWELL.

1. An executor can not, by a resignation of his authority, as such, avoid the rendition of such judgments or decrees against him as may be in regular progress, for assets unadministered at the time of resignation.

2. Thus, where, by regular proceeding against two executors, it has been ascertained that an estate is indebted to a creditor, in a particular amount, and the Court is pursuing an investigation, as to whether the executors are chargeable for the same, on account of assets in their hands—one of the executors can not, by resigning his authority, avoid the rendition of a judgment or decree against himself.

3. And, *it seems*, that the resignation of an executor would not, of itself, be good, if not *filed in the clerk's office*, but merely tendered to the Court, which takes no order upon it.

In Error to the County Court of Montgomery.

In the Circuit Court of Montgomery County, at March term, 1829, William Blackwell declared in sundry counts in assumpsit, against John Thomason and Thomas Haynes, executors of the last will and testament of John B. Blackwell, deceased, for work and labor, on an account stated; money lent and advanced, and money had and received—all by and for the defendants' testator, in his life-time.

To the plaintiff's declaration the defendants plead non-assumpsit, the statute of limitations, and non-claim—to which there were replications and issue.

At March term, 1830, the cause being called, it was suggested by the defendants, that the estate of their testator was insolvent; and, on this suggestion,

the cause was referred to commissioners, to audit the claims, as directed by statute.

The cause having thus gone before the County Court to abide the result of the representation of insolvency, and the Orphans' Court proceeding to audit the several claims against the estate, with the consent of the judge of said Court, and of the said parties, the claim in this case, was referred to the decision of a jury, in the County Court, whose judgment, it was agreed, should determine the said claim, and it should be reported accordingly. And thereupon came a jnry, who, after being impanneled and sworn, well and truly to try the issue, rendered their verdict for the plaintiff, for the amount of the claim; and judgment was rendered by the County Court, accordingly. A motion for a new trial, was then made by the defendants, which was refused by the Court.

Afterwards, at a stated term of the Orphans' Court, held on the first Monday in December, 1830, to which time the final settlement of the estate of the defendants' testator, stood continued, after due notice, the Court proceeded to take up the settlement aforesaid—when Thomas Haynes, one of the executors aforesaid, appeared in open Court, and by his attorney, filed his resignation in writing; whereupon came the attorney of the plaintiff and moved the Court, to reject the said resignation; when, by consent of the said Haynes, and of the parties, by their attornies, the cause was continued. And, afterwards, to wit, on the 11th day of December, 1830, to which time the said cause stood continued, the Court proceeded to the final settlement of the aforesaid estate; when,

after duly auditing the claims against the same, it appeared that the said estate was not insolvent; but that there remained in the hands of the said executors, unadministered, the sum of one thousand and nineteen dollars and twenty-four and two-thirds cents.

It was, therefore, ordered, adjudged and decreed, by the said Court, that William Blackwell recover of the said John Thomason and Thomas Haynes, executors of John Blackwell, deceased, the sum of one thousand and four dollars and ten and three fourths cents, the amount of his claim, as audited and allowed, against said estate.

Thereupon came the said defendants, and assigned for error in this Court, that the Court below gave judgment against the defendants, after one of them, (Haynes,) had filed his resignation.

*Goldthwaite*, for the plaintiffs in error. The only error relied on, is the rendition of judgment after resignation. What may have been the intention of the party in resigning, can not be considered. The executor made the resignation, and it could not be withdrawn: and after being made, no judgment could be rendered against him.

The statute contemplates no more than was done here. It, to be sure, reserves the liability of the executor, and his sureties, for all assets unadmidistered at the time of the resignation, but contemplates no judgment against him on the settlement. All that the Court, then, had the power to do, was to render judgment against the executor who had not resigned.

Reflect upon the hardship, that might ensue : suppose one executor takes to his possession all the effects of the estate—they are called on to settle, and the Court can not discriminate between them ?—Now, I contend, that the only recourse of the one, is to resign : it is his privilege; and his doing so cannot impair any remedy which the parties interested may have against him, for assets unadministered by him, at the time of the resignation. The statutes do not authorise a several judgment against each, by the County Court. And how could a joint-judgment be given, where it clearly appeared there was no joint liability.

*Peck* and *Vandegraaff*, contra. The Court must presume, in this case, that the resignation was made with a fraudulent motive. It was evidently designed, to avoid the rendition of a judgment by the Court, when the Court had, by its action, discovered that the judgment was proper to be given. The judgment which the Court was about to give, was a judicial act, which the party could not controvert, except by appeal.

Again, the resignation was tendered in open Court, for the action of the Court : while the question of resignation was pending, the party virtually withdraws it, by consenting to a continuance. Here is no resignation perfected. Can it be allowed to a representative of an estate to defeat a creditor in this way ? Surely not. The only matter which the creditor was bound to do, was to establish his demand, and fix assets in the hands of the executor. This

he did, and to defeat his judgment, the executor can not resign.

There is nothing in this case, shewing that the executor who resigned, transferred the effects to the other—on the contrary, the decree of the Court is, that the *executors* have in their hands enough to discharge the plaintiff's claim.

SAFFOLD, J.—An action of assumpsit having been instituted in the Circuit Court, against Thomason and Haynes, as executors of John B. Blackwell, deceased; whilst pending, the estate of the said deceased was represented insolvent, and the claim referred to commissioners, appointed by the Orphans' Court, to audit such claims, or to the latter Court, acting in that capacity. The Court having taken upon itself the duty of auditing the claim, it was agreed by the parties, with the assent of the Court, that this demand should be submitted to a jury in the County Court; and that their verdict, and the judgment thereon, should determine the claim, and be reported accordingly.

A jury having been impanneled and sworn, the trial was had, when a verdict and judgment were rendered against the executors, for nine hundred and forty-nine dollars and thirty-seven and a half cents. After many continuances for a hearing and final settlement of the estate, and due notice given, the Orphans' Court met for the purpose, when Haynes, one of the said executors appeared in Court, and filed his resignation in writing. Then, the counsel for the claimant having moved the Court to reject the

resignation, *by consent of the said Thomas Haynes, and of the parties, the case was continued,* until a future day.

On the subsequent day, to which the hearing had been adjourned, the record states, the Court proceeded to the final settlement, (nothing further being said of the proferred resignation;) when, on auditing the various claims, it was found, that the estate was not insolvent, but, that after settling the other demands, there remained in the hands of the executors, a larger amount than that ascertained to be due this claimant—whereupon the Court decreed payment in his favor, for the sum due.

The only ground of error insisted on, is, that the Court decreed payment against the executors, after the alleged resignation of one.

The question is believed to present but little difficulty; and as no authority of doubtful construction was read, in argument, the subject requires but a brief notice.

The right of executors, &c. to resign their authority, by writing, subscribed and delivered into the clerk's office, is expressly declared by the statute;[a] but the provision is equally explicit, that, in such cases, they or their securities, "shall be bound for all the assets or effects, which shall not have been duly administered or applied, or shall not be delivered to their successors." On principle, the responsibility could not be otherwise.

By a due course of proceeding, it had been ascertained, that the estate was indebted to the complainant in a certain sum; further investigation was about

[a] Aik. Dig. 179.

to be had, to determine if the executors were not chargeable with the same, on account of assets in their hands—at this stage, one of them would resign his authority, to defeat the decree; but, according to the statute, referred to, such inequity is not tolerated, even if the resignation had been formally made, without objection. Both the executors had accepted the trust, and continued in the exercise of it, until they had incurred the liability, for which they were then required to account—proceedings having been instituted against them, and so far prosecuted, as to require only the consummation of a final decree, and the Orphans' Court being the most appropriate tribunal for the settlement of estates, neither law nor equity will countenance the artifice resorted to, as the means of evading or delaying justice.

What would have been the consequence of a resignation, at an earlier stage of the administration, it is not now material to enquire.

There is another view of this case, which appears equally decisive, in favor of the creditor. The resignation was *tendered to the Court*, not *filed in the clerk's office*, and pleaded as a matter of defence— nor does the Court appear to have made any decision upon it: after the objection to its acceptance was made, a decision upon it, by the Court, appears to have been prevented, by the continuance of "the case," by the consent of the resigning executor, as well as the other parties to the controversy.

This continuance must be viewed as a postponement, by consent, of the whole matter in contest—as well the proferred resignation, as the litigated claim.

THOMASON and HAYNES, ex'ors vs BLACKWELL.

On the subsequent day, when the Court again organised, no further notice appears to have been taken of the resignation, either by the Court or the executor, who had tendered it. What would have been the decision of the Court upon it, if still relied on, can only be matter of conjecture: and, as not insisted on, it may be presumed to have been abandoned or waived.

From these views, we are of opinion, the judgment or decree must be affirmed.